## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

WARREN DENTON                                                              PLAINTIFF

V.                                                              NO. 3:06CV00400-JDM

OFFICER PATTY HANIFEN

AND

LOUISVILLE METROPOLITAN POLICE DEPARTMENT                    DEFENDANTS


### MEMORANDUM OPINION

The plaintiff, Warren Denton, alleges that his rights to due process of law were violated

when a detective with the Louisville Metropolitan Police Department lost a tape recorded

conversation between himself and a complaining witness during a criminal investigation.

Accordingly, Mr. Denton has sued the detective in her official capacity and the police

department, alleging that his rights were violated under 42 U.S.C. § 1983.  The defendants have

filed a motion for summary judgment in their favor. The court has reviewed the motion,

plaintiff's response thereto, and all other pleadings and evidence of record, and will grant

defendants the relief they seek, although not entirely for the reasons they have proffered.

### I.

In February of 2005, Mr. Denton was indicted on multiple charges of sexual offenses

against children.  Detective Patty Hanifen investigated the allegations against Mr. Denton and in

so doing attempted to obtain incriminating evidence by recording a telephone conversation

between Mr. Denton and one of his alleged victims.  During that conversation, however, Mr.

Denton made no incriminating statements whatsoever and actively denied any wrongdoing.

Consequently, Detective Hanifen left the recording device with the victim and her family, in the hopes that they would obtain some incriminating evidence if Mr. Denton called again.  No further recordings were made and the family allowed the recorder and the one recording to be irreparably damaged by the family dog.   According to Detective Hanifen, leaving a recording device with an alleged victim is standard investigatory practice, even if it contains recorded statements.

Mr. Denton pled not guilty to the charges against him and was brought to trial in August 2005.  During the trial, Detective Hanifen explained on both her direct and cross-examination that the recorded conversation had been lost, but testified that during the recorded conversation Mr. Denton made no incriminating statements or admissions of guilt, and had denied any wrongdoing.  Mr. Denton also testified on his own behalf, and informed the jury that he was not guilty of the charges against him.  In a post-trial deposition related to this case, he also admitted that there was nothing contained in the lost recording that he was not able to tell the jury from the witness stand at trial.

Mr. Denton's trial ended in a mistrial.  A second trial was promptly scheduled, but Mr. Denton chose to enter into an *Alford* plea to one count of sexual abuse in the second degree and was sentenced to six months in prison.  He was given credit for the time he had already served, and was therefore ordered released nine days after the date he entered his guilty plea with no additional time due to be served or parole obligations.

Mr. Denton then brought suit in state court, alleging that Detective Hanifen's decision to leave the recorded conversation and recording device with the victim's family, which she testified was standard practice with in the police department, constituted "gross negligence" that

-2-

deprived him of due process of law by preventing him from presenting exculpatory evidence at his trial.  He also alleged that Detective Hanifen's actions, and the police department's failure to hire qualified persons, to properly train and supervise the persons it did hire, and to promulgate appropriate procedures to protect the constitutional rights of citizens, caused Mr. Denton to suffer severe emotional distress.   The first claim was brought pursuant to 42 U.S.C. § 1983.  The second is a purely state law cause of action.

The defendants promptly removed the case to federal court and then, after completing discovery, filed a motion for summary judgment.  The pleading is only a request for partial summary judgment, however, as the defendants focus their arguments entirely on Mr. Denton's federal claim and make no argument with respect to his second, state law claim.

Defendants' principal argument is that Mr. Denton's § 1983 claim is barred generally by the holding of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), in which the United States Supreme Court declared that a § 1983 damages action in connection with an allegedly unlawful conviction or sentence will not lie unless the plaintiff can show that the underlying conviction or sentence has been invalidated.  In the alternative, they assert that the loss of the recording does not, in and of itself, constitute a denial of Mr. Denton's due process rights, because the evidence would not have contributed significantly to his defense and, even if it would have, there exists no evidence of malice or bad faith on the part of Detective Hanifen.  They further assert that Mr. Denton has failed to meet his burden of establishing that the loss of the recording was due to any unconstitutional policies or procedures of the police department.  As noted previously, no mention is made with respect to the sufficiency of Mr. Denton's state law claim that he suffered emotional distress.

## II.

It should be well known to all in the legal community by now, but it nonetheless bears repeating that summary judgment as a matter of law is proper only where there exists no genuine issue of material fact. FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue for the evaluating court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The party bearing the burden of proof on a particular issue – regardless of whether he is the movant or non-movant – cannot rely on mere allegations or conclusory statements, however. *See Maki v. Laako*, 88 F.3d 361, 364 (1996).   He must point to in the record, or proffer, actual evidence.  *Id.*  What's more, the relied upon evidence must fit within certain parameters.  It must be "of an evidentiary quality that demonstrates the existence of a genuine issue of material fact." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997)(emphasis added).  To be of evidentiary quality, "[t]he proffered evidence need not be in admissible form, but its content must be admissible." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)(emphasis in original omitted)).  The court will now evaluate whether the defendants are entitled to judgment in their favor.

**A.      Whether the Defendants are Entitled to Summary Judgment of Mr. Denton's § 1983 Claim**

Title 42 of the United States Code, Section 1983, creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere.  As such, it has two basic requirements:  (1) the defendant must have acted under color of state law and (2) the defendant's conduct must have deprived the plaintiff of a right secured by federal law.  *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Flint v. Kentucky Dep't of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001).

Moreover, because Mr. Denton has sued Officer Hanifen in her official capacity (*see* Complaint at ¶¶ 6-8) and the Louisville Metropolitan Police Department, a department of the Louisville-Jefferson County Metropolitan Government (the "County"), he has effectively sued only the County.  *See Lambert v. Hartman*, ___ F.3d ___, 2008 WL 482279 at *5 (6th Cir. 2008); *Smallwood v. Jefferson County Government*, 743 F. Supp. 502, 503 (1990)(concluding that, although a § 1983 complaint named the county fiscal court and judge executive as defendants sued in their official capacities, there was really only one defendant – the municipality).  The only issue in this case, then, is whether Officer Hanifen's actions, as alleged in Mr. Denton's complaint, were part of a County policy or custom that violated Mr. Denton's constitutional right to due process of law.  *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978)

Before evaluating whether defendants are correct in their assertion that plaintiff has not proffered any evidence of a violation of § 1983, however, the court must turn first to their assertion that Mr. Denton's § 1983 claim is barred by the holding of *Heck v. Humphrey* and its progeny.

-5-

      1.      **Whether *Heck v. Humphrey* Bars Plaintiff's § 1983 Claim.**

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the United States Supreme Court declared that a § 1983 damages action in connection with an allegedly unlawful conviction or sentence  will not lie unless the plaintiff can show that the underlying conviction or sentence has been overturned, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus.  Subsequently, countless lower federal courts have held that habeas relief is a necessary prerequisite to such a § 1983 action.  *See, e.g., Gilles v. Davis*, 427 F.3d 197, 209-10 (3rd Cir. 2005).  The Sixth Circuit and others, however, have held that *Heck* is no bar to the claims of a § 1983 plaintiff for whom habeas relief was not available to vindicate their federal rights.  *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592, 603 (2008)(citing cases from sister circuits).  Such is the case here.

A person convicted of a crime in state court can obtain a writ of habeas corpus only if he is "in custody" pursuant to the unlawful judgment of that court.  *See* 28 U.S.C. § 2254.  A person, even if in pre-trial custody, cannot attack a judgment until it is rendered, or a sentence until he has begun to serve it.  *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968).  Thus, even though Mr. Denton was "in custody" until the court accepted his guilty plea and ordered him released, habeas relief was not available to him because no judgment had been rendered and no sentence imposed based on that judgment.  In addition, while those on parole or released on their own recognizance continue to suffer restraints on their liberty, and therefore are considered "in custody" for purposes of habeas relief even though not physically behind bars, *see Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963), habeas relief is foreclosed to those who have completed their term of incarceration, with no further obligations due, or supervision enforced

-6-

by, the state.  Accordingly, the moment the state court entered its order accepting Mr. Denton's guilty plea and awarded him full credit for time served with no further restraints on his liberty, habeas relief was foreclosed to Mr. Denton.  The time between the court's acceptance of Mr. Denton's guilty plea and the order releasing him was only slightly more than one week.  Thus, although technically he could have pursued habeas relief during that small window of time, as a practical matter, habeas relief was foreclosed to him once the judge entered the order releasing him and, practically speaking, was never really available.  Consequently, *Heck* poses no bar to plaintiff's assertion of his § 1983 claim in this matter.  *See Powers*, 501 F.3d at 603.

### 2. Whether Plaintiff's Claims Pursuant to 42 U.S.C. § 1983 Can Withstand Summary Judgment.

A municipality such as the County cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *Monell,* 436 U.S. at 691; *Deaton v. Montgomery County, Ohio,* 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, to present a viable claim, Mr. Denton must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy."  *Garner v. Memphis Police Dep't,* 8 F.3d 358, 363-64 (6th Cir. 1993)(quoting *Coogan v. Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).

In this matter, Detective Hanifen testified that it was standard practice for investigating officers to leave recording devices (including those containing recorded conversations) with victims in the hopes of obtaining further, possibly incriminating, evidence.  Beyond that evidence, which was attached to the *defendants'* motion for summary judgment, Mr. Denton has proffered nothing.  There are no affidavits, deposition transcripts, other documents, or any other form of putative evidence attached to his response to the motion for summary judgment, or to

-7-

any other pleading in the file.  Nevertheless, Officer Hanifen's admission that leaving evidence of that type was standard procedure in the police department, could be construed as evidence at least of a municipal custom, regardless of which party provided the court with actual evidence of the admisson.  The more pressing question is whether the practice or custom constituted a constitutional violation.

It is a long-standing rule of criminal and constitutional law that a defendant has the right to exculpatory evidence, even in the absence of his specific request for it.  *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963).  As a result, the Constitution imposes a duty on governments to preserve evidence related to the prosecution of an accused.  That duty, however, is limited to material exculpatory evidence, in other words "evidence that might be expected to play a significant role in the suspect's defense."  *California v. Trombetta*, 467 U.S. 479, 488 (1984). To qualify, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  Mr. Denton cannot meet this standard.

Whether the evidence was exculpatory is not really at issue.  As Officer Hanifen testified at his trial, nothing recorded on the tape was in any way inculpatory of Mr. Denton and, in fact, during the recorded conversation, he denied any wrongdoing.  In addition, Mr. Denton also took the stand at his trial to deny wrongdoing and to affirm that he made no inculpatory statements whatsoever during the recorded conversation.  It is important to note, however,  that Mr. Denton has never suggested that the tape contained the *victim's* acknowledgment that he never committed a crime, only that *he* denied committing any crime during the recording.

-8-

Accordingly, he therefore not only obtained (via the live testimony of Officer Hanifen), but presented (via her testimony and his own) evidence comparable to the playing of the actual tape. Thus, the court cannot say that the County's custom of leaving recording devices with victims caused any loss of Mr. Denton's right to due process.

Even if the exculpatory nature of the recording was indeterminate and the tape only "potentially useful" to Mr. Denton (*e.g.,* if he could make a good faith argument that the recording contained ambiguous statements by the victim that a reasonable jury *might* interpret as an acknowledgment that he committed no crime), to prevail on his § 1983 claim he still would be required to establish that the County's custom was motivated by bad faith and rooted in a conscious effort to suppress exculpatory evidence. *See Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004); *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996)(citing *Trombetta*, 467 U.S. at 488)). As defendants correctly point out, Mr. Denton has presented the court with no evidence in the record to support his assertions regarding the putative unconstitutionality of the County's policies, which the court finds surprising, given that Mr. Denton is not proceeding *pro se*, but is represented by counsel. The law is clear: in response to a motion for summary judgment, a non-movant cannot rely on assertions and conclusory statements, but must present evidence to establish the existence of facts warranting consideration by a jury. *See, e.g., Maki v. Laakko*, 88 F.3d 361, 364 (6th Cir. 1996). Given the nature of the response brief, the court is uncertain whether counsel had no evidence, or was unaware of his obligation. Regardless, the issue is now moot. Mr. Denton's § 1983 claim cannot withstand summary judgment and it will be dismissed.

**B.     Mr. Denton's Pendent State Law Cause of Action for Intentional Infliction of Emotional Distress**

Having dismissed the last federal claim in this action, the court must now address the

remaining state law claim.  The defendants made no mention of the state law claim in their

motion for summary judgment and, accordingly, it is still a potentially viable cause of action.

The question is whether this court need retain jurisdiction over it.

The district court has discretion whether or not to exercise supplemental jurisdiction over

state law claims, such as Mr. Denton's claim that the defendants' actions caused him emotional

distress.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726

(1966).  In *United Mine Workers*, the Supreme Court stated that "if the federal claims are

dismissed before trial ... the state claims should be dismissed as well." 383 U.S. at 726.

Subsequently, the Supreme Court clarified this statement, and said:

> [W]e have made clear that this statement does not establish a mandatory rule to be
> applied inflexibly in all cases. The statement simply recognizes that in the usual case in
> which all federal-law claims are eliminated before trial, the balance of factors to be
> considered under the pendent jurisdiction doctrine--judicial economy, convenience,
> fairness, and comity--will point toward declining to exercise jurisdiction over the
> remaining state-law claims.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. at 350 n.7 (citing *Rosado v. Wyman,* 397 U.S. 397,

403-405 (1970)).

The Sixth Circuit, however, has articulated a strong policy in favor of declining to

exercise jurisdiction over supplemental state law claims when the federal claim has been

dismissed before trial, *see, e.g., Service, Hosp., Nursing Home and Pub. Employees Union v.

Commercial Prop. Servs., Inc*., 755 F.2d 499, 506 n.9 (6th Cir.); *Kurz v. Michigan*, 548 F.2d 172

(6th Cir.), unless there is a strong federal policy or interest that would support the exercise of

jurisdiction over the supplemental state law claims, *cf. United Mine Workers*, 383 U.S. at 727;

*Rosado v. Wyman,* 397 U.S. 397; *Roane v. Comair, Inc*., 708 F. Supp. 802, 805 (E.D. Ky. 1989).

In the present case, there are no remaining federal claims.  Nor are the state law claims in this

-10-

action closely tied to any federal policy or interest that would support this court's deviating from the general rule of not continuing to exercise jurisdiction in such a situation.

In declining to exercise jurisdiction, this court has discretion to remand the case back to state court rather than simply dismissing the action. *Carnegie-Mellon,* 484 U.S. at 351-52; *In re Romulus Cmty. Sch.*, 729 F.2d 431, 439 (6th Cir. 1984). Consideration of the time the actions complained of occurred, the fact that discovery is complete and there appears to be no need to start discovery anew, that there is no federal interest or policy involved in the remaining issues, that there is no reason the state court is not a convenient and fair forum for the parties, and the comity interests involved, leads this Court to conclude that the appropriate action is to remand this case and its sole remaining claim to state court rather than dismiss it outright.

### III.

The court will enter an order consistent with this memorandum opinion that grants defendants' request for summary judgment of Mr. Denton's federal claim, and remands the remaining state law claim to the Jefferson Circuit Court.

DATE:

cc:     counsel of record